## COOPER *v.* BRADFORD.

4-5092

Opinion delivered May 30, 1938.

*Alfred Featherston* and *O. A. Featherston,* for appellant.

*Tom Kidd, Walter J. Hebert* and *Talley & Talley,* for appellees.

DONHAM, J. J. W. Bradford of Pike county, Arkansas, died January 29, 1937. He was the owner of certain

lands and personal property at the time of his death; and Floyd A. Kizzia was appointed administrator of his estate by the probate court of Pike county. Bradford's wife preceded him in death and no children or other lineal descendants were left surviving them or either of them. The record shows that they never had any children.

About the year 1886, J. E. Cooper, the appellant, and Ernest Cooper, his brother, were carried by their father to the home of the said J. W. Bradford to live. At that time appellant was about three years of age. He remained with Bradford and his wife until he was about twenty-one years of age, except on two occasions he left their home and remained away for a few months each time. Ernest Cooper remained there for about one year.

The appellant, notwithstanding he claimed he had been legally adopted by the deceased, J. W. Bradford, always bore the name of "Cooper"; and when he grew to manhood he married and transacted all his business in the name of "Cooper." He lived in the community and a nearby town until about fifteen years prior to the death of Bradford, when he went to a western state and did not come back, except on a visit, until the death of the said Bradford.

Appellant first filed his claim in the probate court of Pike county, claiming the entire estate of the said Bradford, deceased, and alleging that he was the legally adopted heir of the deceased and that he was, therefore, entitled to all of the assets of the estate of the deceased. Later this claim in the probate court was abandoned; and a suit was filed by appellant in the chancery court of Pike county, by which he claimed the assets of the estate of the deceased Bradford by reason of an alleged contract to adopt him, which, under the circumstances, it was alleged, amounted to an equitable adoption.

The appellees, being the collateral kindred of the deceased, Bradford, filed an answer denying each and every material allegation of the complaint. Upon a trial of the issues of said cause, the court dismissed the complaint of appellant for want of equity. From the judg-

ment of the court, dismissing the complaint for want of equity, appellant appealed.

The facts developed by the record show that about the year 1886 appellant's father carried him to the home of J. W. Bradford and wife, Mary E. Bradford, when he was about three years of age. He was reared in the Bradford home. Many witnesses testified that in conversation with J. W. Bradford he had told them that he had adopted appellant and that when he died his estate would go to appellant. Approximately as many witnesses testified that the said Bradford had talked with them and had told them that he never had adopted appellant and that he had done for appellant all he intended to do, or words to that effect.

It was shown in evidence that the records of Pike county had been burned and, therefore, there was but little evidence, if any, to show an actual adoption. Appellant contented himself with the showing he made as to conversations his witnesses had had with the said Bradford in which Bradford had told them that he had adopted appellant. Shortly after appellant was taken to live in the home of the Bradfords, W. R. McClennahan came into their home to live and remained there for more than a year. He testified as a witness, as did some of the closest neighbors and relatives of the deceased, Bradford. They testified that they did not know anything about a contract to adopt appellant, nor did they know that Bradford had adopted appellant, if such were the case.

One who seeks to recover under an alleged contract to adopt has the burden of establishing the contract by clear and convincing evidence. The rule is stated in 1 C. J., p. 1379, § 28, as follows:

"The burden is on the person claiming the benefit of an alleged contract for adoption to establish it by clear, cogent and convincing evidence."

In the case of *O'Connor* v. *Patton,* 171 Ark. 626, 286 S. W. 822, this court, quoting from 1 C. J., p. 1377, § 21(b), said: "The implied covenant arising from a contract to adopt, not legally executed, where the child

has fulfilled its part of the contract, is that the infant should receive a child's share of the estate of the foster parent. In case of intestacy that share is fixed by the statutes of descent and distribution, but, if there is a will, it is fixed by the will. The mere contract to adopt is not sufficient of itself to make the child a legal heir of the promisor, because the right to take as heir exists only by operation of law. The child takes in these cases by virtue of the contract and by way of damages or specific performance. An agreement to adopt does not prevent the person making the agreement from disposing by will of all his property to other persons than the child to be adopted; but an agreement, either express or implied, to give the adopted child a certain portion of the adoptive parent's property will be enforced.''

In the last above case, the court further said: ''The right of inheritance as such is conferred in our state upon a stranger in blood only by pursuing the special statutory proceeding for adoption.'' Citing *Morris* v. *Dooley,* 59 Ark. 483, 28 S. W. 30; *Chehak* v. *Battles,* 133 Ia. 107, 110 N. W. 330, 12 Ann. Cas. 140, 8 L. R. A., N. S. 1130.

Again, in the case of *Minetree* v. *Minetree,* 181 Ark. 111, 26 S. W. 2d 101, this court decided that the right of inheritance as such is conferred upon a stranger in blood only by pursuing the special statutory proceeding for adoption. In neither the case of *O'Connor* v. *Patton, supra,* nor in the case of *Minetree* v. *Minetree, supra,* did the court hold that an oral contract for adoption of a child or a contract to give the child the same rights as a natural child could be enforced after the death of the foster parent. Neither do we hold in this case that such contract may be enforced after death of the foster parent, nor do we hold that it may not be enforced. But, as was said in both of said cases, ''conceding, without deciding, that an oral contract for the adoption of a child and to give the same rights as a natural child, may be enforced after the death of the foster parent,'' yet this doctrine can avail appellant nothing in the instant case, for the trial court found against appellant and dismissed his

complaint for want of equity; and we are unable to say that the decree of the court is not supported by a preponderance of the evidence. The decree, therefore, must be affirmed. It is so ordered.